Filed 12/22/14  In re D.L. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| In re D.L. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E061617 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J245679, J245680 & J248788) |
| v. | OPINION |
| W.L., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Cheryl C. Kersey, Judge.  Affirmed.

Michele Anne Cella, under appointment by the Court of Appeal, for Defendant and Appellant.

Jean-Rene Basle, County Counsel, Jeffrey L. Bryson, Deputy County Counsel, for Plaintiff and Respondent.

1

W.L. (father) appeals from orders of the juvenile court denying his modification petition and terminating his parental rights to D.D.L., W.L., and D.R.L. Father contends he demonstrated changed circumstances, and that continued reunification services was in the children's best interests, so the juvenile court abused its discretion by summarily denying his petition under Welfare and Institutions Code[1] section 388 without conducting an evidentiary hearing. Father also argues that the trial court erred by terminating his parental rights, and by not finding under section 366.26, subdivision (c)(1)(B)(i), that a continuation of father's parental relationship would be beneficial to the children. We find no error and, therefore, affirm the orders.

## I.

## FACTS AND PROCEDURAL HISTORY

On August 24, 2012, San Bernardino County Children and Family Services (CFS) filed petitions alleging that D.D.L. and W.L. were dependent children within the meaning of section 300, subdivision (b).[2] The petitions and a detention report dated August 27, 2012, alleged that the parents I.M. (mother)[3] and father had (1) substance abuse problems, (2) engaged in domestic violence, (3) maintained a filthy home, and (4) failed to provide adequate and appropriate care and safe living conditions for the children. The

---

[1] Unless otherwise indicated, all additional undesignated statutory references are to the Welfare and Institutions Code.

[2] By order dated August 13, 2014, this court, on its own motion, incorporated the record from father's prior writ proceeding in case No. E060694. (Cal. Rules of Court, rule 8.147.)

[3] Mother did not file a notice of appeal and, therefore, is not a party to this appeal.

2

juvenile court ordered that D.D.L. and W.L. be removed from the custody of their parents and placed in the temporary custody of CFS.

In a jurisdiction report filed on September 13, 2012, the social worker reported that mother and father had a history of using alcohol and drugs. The social worker also reported that the family home was filthy during an August 21, 2012 visit, but indicated during two other visits in September it appeared the parents had been actively "cleaning" and "working on" the home. The parents attended supervised visits with the children in their temporary placement which, on the whole, went well. Although the social worker recommended the children should not be returned to the parents at that time, she concluded the prognosis for successful reunification was good and recommended that the juvenile court offer reunification services. She also recommended that the court direct father to complete parenting counseling and classes, and to submit to drug testing.

In an addendum report filed on October 5, 2012, the social worker reported that she had visited the home and found the parents actively cleaning the garage of dangerous clutter. However, the social worker also reported that mother had been arrested since the prior visit, and that the parents' landlord had informed her that he was in the process of evicting them for not paying rent. The social worker again recommended that the children remain in their temporary placement and that the court approve the reunification case plan. The juvenile court declared the children to be dependents of the court, adopted the social worker's recommendations and case plan, and ordered that the children were to remain in their temporary placement.

In March 2013, mother gave birth to D.R.L., who was born with various medical issues and tested positive for amphetamine. D.R.L. was taken into protective custody on April 5, 2013, and on April 9, CFS filed a petition alleging that D.R.L. was a dependent child within the meaning of section 300, subdivisions (b) and (j). The juvenile court ordered that D.R.L. be removed from the custody of both parents and placed in the temporary custody of CFS. D.R.L. was released from the hospital on April 15, 2013, and placed in a foster home.

In a status review report filed on April 24, 2013, the social worker reported that father had been participating in reunification services, and that visits with D.D.L. and W.L. were appropriate. Father was making progress toward reunification until his enrollment in services through Christian Counseling Services was discontinued due to his lack of attendance. The social worker reported that father had been arrested and spent almost two weeks in jail.

In a jurisdiction and disposition report regarding D.R.L. filed on April 29, 2013, the social worker reported that father had not participated in drug testing as required under his case plan, and his missed tests were deemed positive. The social worker reported that father's visits with D.R.L. were appropriate, but sporadic, and father's relationship with the child continued to grow.

At a six-month status review hearing conducted on April 30, 2013, the juvenile court approved the case plan for father and ordered him to participate in reunification services. It further ordered that D.D.L. and W.L. continue in their temporary foster placement. The court found that both parents continued to use drugs, and that they made

4

only moderate progress toward reunification. On May 21, 2013, the juvenile court conducted a continued jurisdictional hearing for D.R.L. and found her to be a dependent of the court.

In a status review report filed on October 24, 2013, the social worker reported that all three children were adjusting to and doing well in their respective foster placements. The social worker reported that father was engaged in his case plan, but had not yet made significant progress in demonstrating that he could adequately provide a safe home for the children. Father's visits with D.D.L. and W.L. continued to go well, although he was usually late and had missed several visits with D.R.L. Father completed 10 counseling sessions and 10 parenting classes, but had not appeared for scheduled substance abuse appointments. He had, however, appeared for drug testing and tested negative. The social worker recommended that reunification services be continued for father, and, although the juvenile court characterized father's progress as minimal, it adopted the recommendation.

In a status review report filed on February 14, 2014, the social worker reported that father had been arrested shortly after the last review hearing and had not completed his reunification plan. However, the social worker also reported that father had continued to have positive visits with the children, and the children continued to do well in their respective foster placements. Because of father's failure to complete his case plan and his lack of progress toward providing a safe home for the children, the social worker recommended reunification services be cancelled and a hearing be set, pursuant to section 366.26, for selection and implementation of a permanent plan. On February 27, 2014, the

5

juvenile court found that father's progress was still minimal. Therefore, the court terminated reunification services for father and set a hearing pursuant to section 366.26, but ordered father continued visitation with the children pending the hearing because the children had derived some benefit from the visits.[4]

In a disposition report filed on June 17, 2014, the social worker recommended that father's parental rights be terminated as to all three children. The social worker reported that the children continued to do well in their foster homes, they were very attached to their foster/prospective adoptive parents, and the prospective adoptive parents had expressed a desire to adopt the children. Father continued to make regular visits with the children.

On June 27, 2014, father filed a petition pursuant to section 388 seeking an order returning the children to him under family maintenance or, in the alternative, reinstating reunification services. Father alleged changed circumstances warranted relief because, since the date the juvenile court terminated reunification services, he had (1) completed a parenting course, (2) continued to participate in Alcoholics Anonymous and Narcotics Anonymous (AA/NA), and (3) obtained appropriate housing. He alleged these changed circumstances meant that he could "provide a safe & loving home" for the children. The juvenile court denied the petition and declined to set an evidentiary hearing. It found no

---

[4] Father timely filed a notice of his intent to challenge by petition for writ of mandate the orders terminating reunification services and setting a hearing pursuant to section 366.26 (Cal. Rules of Court, rules 8.450, 8.452), but this court dismissed the petition when his appointed counsel filed a "Non-Issue Writ."

changed circumstances warranting relief under section 388 and concluded the requested relief would not be in the children's best interests.

At the section 366.26 hearing, father testified that he had been the primary caregiver for D.D.L. and W.L. before their detention, and that both children recognized him as their father. He had visited with them weekly for the past six months, during which he played with them and they recognized him as their father. Father had also visited with D.R.L. once a week since her detention, and she too recognized him as her father. Father believed that a continued relationship with the children would be in their best interests "[b]ecause I believe that they need me as much as I need them emotionally and physically," and that "it would be detrimental, I believe, to keep us from each other." Finally, father requested that the court consider a less permanent plan than adoption.

Counsel for the children argued that father's parental rights should be terminated. Counsel for CFS also argued that father's parental rights should be terminated, and that the court should not find that the benefit exception under section 366.26 applied. "I don't believe there is detriment in severing parental rights. According to the father, his statement was that it is detrimental to keep us from each other, but he didn't elaborate as to why it is detrimental to sever parental rights." Counsel also argued that the question before the court was not whether or not father loved his children, but "whether or not there [was] a substantial bond, parental bond, that would prevent these children from being adopted and gaining stability and permanency." Father's attorney requested that the court consider guardianship or some other permanent plan short of termination of parental rights and adoption.

The court ruled that the only applicable exception to termination of parental rights was the benefit exception and concluded that it did not apply to father. Although the court found that father "maintained regular visitation and contact," it characterized the visits as those "of a friendly visitor," and concluded the benefit to the children from the visits was "possibly incidental or minor . . . as they have had caregivers for a significant period of time in their lives." Based on father's minimal and intermittent progress in his case plan and his "inability to really engage in services to become [a] parent," the court found that termination of parental rights and adoption would be in the children's best interests. The court found by clear and convincing evidence that father "failed to participate regularly and make progress in [his] case plan," and that his progress had been minimal. Therefore, the court terminated father's parental rights, found the children to be suitable for adoption, and directed CFS to finalize the permanent plan for the children's adoption.

Father timely filed a notice of appeal.

II.

DISCUSSION

A. *The Juvenile Court Did Not Abuse Its Discretion by Denying Father's Section 388 Petition Without Conducting an Evidentiary Hearing*

"A juvenile court order may be changed, modified or set aside under section 388 if the petitioner establishes by a preponderance of the evidence that (1) new evidence or changed circumstances exist, and (2) the proposed change would promote the best interests of the child. [Citation.] The parent bears the burden to show both a legitimate

8

change of circumstances and that undoing the prior order would be in the best interest of the child.  [Citation.]  Generally, the petitioner must show by a preponderance of the evidence that the child's welfare requires the modification sought.  [Citation.]" (*In re A.A.* (2012) 203 Cal.App.4th 597, 611-612 [Fourth Dist., Div. Two].)

"Not every change in circumstance can justify modification of a prior order.  [Citation.]  The change in circumstances must relate to the purpose of the order and be such that the modification of the prior order is appropriate.  [Citations.]  In other words, the problem that initially brought the child within the dependency system must be removed or ameliorated.  [Citation.]  The change in circumstances or new evidence must be of such significant nature that it requires a setting aside or modification of the challenged order.  [Citation.]" (*In re A.A.*, *supra*, 203 Cal.App.4th at p. 612.)

Section 388 is "an 'escape mechanism' when parents *complete a reformation* in the short, final period after the termination of reunification services but before the actual termination of parental rights.  [Citation.]" (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 528, italics added.)  It is not enough for a parent to show an incomplete reformation or that he or she is in the process of changing the circumstances which lead to the dependency.  "After the termination of reunification services, the parents' interest in the care, custody and companionship of the child are no longer paramount.  Rather, at this point 'the focus shifts to the needs of the child for permanency and stability" . . . . [Citation.]  A court hearing a motion for change of placement at this stage of the proceedings must recognize this shift of focus in determining the ultimate question before it, that is, the best interests of the child." (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.)

9

"'A petition which alleges merely changing circumstances and would mean delaying the selection of a permanent home for a child to see if a parent . . . might be able to reunify at some future point, does not promote stability for the child or the child's best interests. [Citation.] "'[C]hildhood does not wait for the parent to become adequate.'"" [Citation.]" (*In re Mary G.* (2007) 151 Cal.App.4th 184, 206.)

"'It is not enough for a parent to show *just* a genuine change of circumstances under the statute. The parent must show that the undoing of the prior order would be in the best interests of the child. [Citation.]' [Citation.] The fact that the parent 'makes relatively last-minute (albeit genuine) changes' does not automatically tip the scale in the parent's favor. [Citation.] Instead, 'a number of factors should be examined.' [Citation.] First, the juvenile court should consider 'the seriousness of the reason for the dependency . . . .' [Citation.] 'A second important factor . . . is the strength of the existing bond between the parent and child . . . .' [Citation.] Finally, as 'the essence of a section 388 motion is that there has been a change of circumstances,' the court should consider 'the nature of the change, the ease by which the change could be brought about, and the reason the change was not made before . . . .' [Citation.] 'While the bond to the caretaker cannot be dispositive, . . . our Supreme Court made it very clear . . . that the disruption of an existing psychological bond between dependent children and their *caretakers* is an extremely important factor bearing on any section 388 motion.' [Citation.]" (*In re D.R.* (2011) 193 Cal.App.4th 1494, 1512.)

"The juvenile court shall order a hearing [on a section 388 petition] where 'it appears that the best interests of the child . . . may be promoted' by the new order.

10

(§ 388, subd. (d).)  Thus, the parent must sufficiently allege *both* a change in circumstances or new evidence *and* the promotion of the child's best interests.  [Citation.]  [¶]  A prima facie case is made if the allegations demonstrate that these two elements are supported by probable cause.  [Citations.]  It is not made, however, if the allegations would fail to sustain a favorable decision even if they were found to be true at a hearing.  [Citations.]  While the petition must be liberally construed in favor of its sufficiency [citations], the allegations must nonetheless describe specifically how the petition will advance the child's best interests.  [Citations.]"  (*In re G.B.* (2014) 227 Cal.App.4th 1147, 1157, fn. omitted.)  "This court reviews a juvenile court's decision to deny a section 388 petition without a hearing for abuse of discretion.  [Citation.]"  (*Id.* at p. 1158.)

Father contends the juvenile court abused its discretion by summarily denying his petition because he sufficiently alleged changed circumstances, and returning the children to his custody under family maintenance or reinstating reunification services would be in the best interests of the children.  In his briefs, father relies not only on the changed circumstances alleged in the petition, but also on the facts that (1) he was no longer living with mother and, therefore, "her ongoing drug use ceased to be an impediment to [father] getting the children back," (2) he had been released from jail, (3) the filthy house had been cleaned up, and (4) the social worker reported that father did not appear to have a drug problem.  But, as CFS points out in its brief, none of these additional alleged changed circumstances were included in father's petition, and the record demonstrates that all or most of these facts predated the juvenile court's order terminating reunification

11

services. Consequently, these facts cannot be counted as *changed* circumstances that would warrant undoing that order.

With respect to the changed circumstances that were actually alleged, and that did in fact postdate the order terminating reunification services, father did not make a prima facie showing that he was entitled to relief. Father pleaded that he had completed a parenting course, that he continued to participate in AA/NA meetings, and that he had obtained appropriate housing. Even if we liberally construe these allegations, at most, they demonstrate that father had begun the process of reforming himself and becoming an adequate parent. Completion of an unspecified parenting course, while commendable, was not the equivalent of making satisfactory progress on his case plan. Likewise, father's continued participation in drug and alcohol counseling and his recent acquisition of suitable housing did not demonstrate that father could adequately provide for the children in the future. At most, father alleged *changing* circumstances, not changed ones. (*In re Mary G.*, *supra*, 151 Cal.App.4th at p. 206.)

Father did not sufficiently allege that returning the children to him on family maintenance or reinstating reunification services would be in the best interests of the children. D.D.L. and W.L. were removed from father's custody at a very young age and had spent much of their young lives with their caregivers. D.R.L. was detained shortly after her birth and never lived with father. Father did not allege a strong bond between himself and the children, and the record demonstrates that the children were bonding well with their caregivers. Therefore, the juvenile court reasonably concluded that granting

12

the petition would not be in the children's best interests.  (See *In re D.R.*, *supra*, 193 Cal.App.4th at p. 1512.)

In sum, we conclude the juvenile court did not abuse its discretion.

B.  *The Juvenile Court Did Not Err by Finding the Children Would Not Benefit from Father's Continued Parental Relationship*

"Section 366.26 provides that if parents have failed to reunify with an adoptable child, the juvenile court must terminate their parental rights and select adoption as the permanent plan for the child.  The juvenile court may choose a different permanent plan only if it 'finds a compelling reason for determining that termination [of parental rights] would be detrimental to the child [because]:  [¶]  (i) The parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship.'  (§ 366.26, subd. (c)(1)(B)(i).)"  (*In re Marcelo B.* (2012) 209 Cal.App.4th 635, 642.)

The appellate courts are divided on the appropriate standard of review of a juvenile court's conclusion that the benefit exception does not apply.  Some courts have applied the abuse of discretion standard while others have applied the substantial evidence test.  (See *In re Scott B.* (2010) 188 Cal.App.4th 452, 469.)  Recently, some courts have taken a middle approach, applying the substantial evidence test to the juvenile court's factual finding of whether there exists a beneficial parent-child relationship, and applying the abuse of discretion standard to the juvenile court's "'"quintessentially" discretionary decision'" that termination of parental rights will not be detrimental to the child.  (*In re K.P.* (2012) 203 Cal.App.4th 614, 621-622, quoting *In re*

*Bailey J.* (2010) 189 Cal.App.4th 1308, 1315.)  We need not decide which approach is correct because under either standard, the juvenile court did not err.

There is no dispute father visited regularly with the children, and that the visits went well with the children showing affection for father.  The pertinent issue then becomes whether the second prong of the exception applies, i.e., whether the children would derive a greater benefit from continuing the parent-child relationship with father than they would from being adopted.  (*In re B.D.* (2008) 159 Cal.App.4th 1218, 1234-1235.)

*In re Autumn H.* (1994) 27 Cal.App.4th 567, is the seminal case regarding exceptions to the preference for adoption.  There, the court held that parent-child relationships that can prevent termination of parental rights are ones that promote "the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents.  In other words, the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer.  If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated."  (*Id.* at p. 575.)

"The exception must be examined on a case-by-case basis, taking into account the many variables which affect a parent/child bond.  The age of the child, the portion of the child's life spent in the parent's custody, the 'positive' or 'negative' effect of interaction between parent and child, and the child's particular needs are some of the variables which

14

logically affect a parent/child bond." (*In re Autumn H*., *supra*, 27 Cal.App.4th at pp. 575-576.)

Adoption cannot be thwarted simply because a child would derive some benefit from continuing the parent-child relationship, and adoption should be ordered when the court finds that the relationship maintained through visitation does not benefit the child significantly enough to outweigh the strong preference for adoption. (*In re Jasmine D*. (2000) 78 Cal.App.4th 1339, 1350.) The juvenile court may reject the parent's claim simply by finding that the relationship maintained during the visitation does not benefit the child significantly enough to outweigh the strong preference for adoption. To apply the exception, the court must find compelling reasons to apply the exception. Only in an extraordinary case will the preservation of parental rights prevail over the Legislature's preference for adoption. (*Ibid*.)

There is no genuine dispute that father was affectionate with the children during his regular visits, and they recognized him as their father and reciprocated affection. But there was no further evidence to demonstrate how deeply attached the children were to father, and no bonding study was conducted. There is no indication that the children cried at the end of their visits or that they were unhappy to return to their caregivers.

Considering the children's tender ages, the fact D.D.L. and W.L. lived with father for a relatively brief time and D.R.L. never lived with father, and the demonstrated strength of the bond between the children and their prospective adoptive parents, the juvenile court did not err by concluding the bond between father and the children was not so substantial that severing it would be detrimental. The benefits the children would

15

derive from a continued parental relationship with father, whose long-term ability to provide for them was not yet proven, did not outweigh the benefits they would derive from a stable and secure adoptive family. The record supports the trial court's findings, and we find no abuse of discretion.

## III.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:

MILLER
J.

CODRINGTON
J.

16